All right, good morning. Good morning. We have three cases on the argument calendar today and two on submission. I'm told all the lawyers are here, so we will begin with the first case, which is Sasson v. Garrelick v. Mann. Thank you. And it's Mr.—pronounced Mann, also? Mann, also. How do you pronounce it? It's kind of a nickname without the—I think I have the Irish variation of Mann. Mann. Yes. Okay. And so, Mr. Mann, you have reserved one minute for rebuttal. Is that right? Yes, I have, Your Honor. May I remove my mask to speak? Yes. I should have said that at the outset. Any advocate at the lectern who is speaking is free to take off their mask. Not required to, but certainly free to. Everyone else should just keep their mask on while they're observing. Great. Okay. You may proceed. Good morning, Your Honors. My name is Richard Mann. It's an honor to be here after these pandemic times. I represent the appellant, Howard Mann. I'm going to make three central points, and then I'm going to stop. First one is the probate exception, then the oral modification theory we're going to visit, and then the failure to properly exercise the option. But I submit to you respectfully, Your Honors, this case could stop at the probate exception. That's the center of the shell. That's the centerpiece here. We are asking you to reverse the court below, dismiss the case, and send it back to Florida where it belongs. To which court? Excuse me? To which court in Florida? The Florida probate court, Your Honor. Well, didn't the legislature say they didn't want that? No, Your Honor. What happens is that if a matter can be resolved only on issues related to probate, it can go to the probate court. But the mistake the court below made was, one, it created a mandate, and, two, it misunderstood the role of other courts. You can have a probate court that has custody or control of an asset or a race, but you can have another court resolving an issue that relates to probate as long as all the issues flow back to the probate court. That was a mistake the court— Didn't the Florida court say that it could not decide the dispute? Yes, only because in that case, the probate court didn't have that power. But it's not unusual for an issue that's related to probate, or that has an effect on probate, to be resolved and then go back to the probate court again. That's the case in New York. In that case, as long as the probate court remains custody, keeps custody or control over the race or the asset, then the probate exception is going to apply. Do you want us to say the probate court was wrong about its own power? No, not at all. Well, didn't they say we can't do this? No, absolutely not. What I'm saying is that there's a confusion here concerning other courts, and the position or the mistake the court below made is that an issue has to be resolvable only in probate court, and that's not the case. You're telling me about the district court. I'm asking you about the probate court. Right. Did they say they can't handle this case? Right. So you want us to send it to a court that says we can't handle it? Is that odd? No, Your Honor. Have you ever seen a federal court send a case to a court that said we can't handle it as a matter of state law? No. Your Honor, here's the distinction, I think, is that a matter can be sent. No, I take it the answer is you've never seen a case where a federal court did that, because that's what I asked you. Yes, actually I did in the Mandel case. A federal court said to a state court, take this case even though you've said you can't do it under state law. There's a distinction. If a case is sent back to the probate court- But I ask you, have you ever seen a case where that happened? Either you have or you haven't. Yes. And if you have, tell me which case it is. It's the Mandel case in the District of Connecticut, and I'll get to that, Your Honor. Okay. Okay? So what I'm saying is that after Lefkowitz, this court cut a new path. It cut a new path, and it focused on two things, because previously there was confusion over things that were probate-related. And that was not a workable standard. After Marshall, there was a divide between tortious conduct and seeking a race in the custody of the state court. But now, the clear test after Lefkowitz and after Marshall is, if a plaintiff seeks to reach a race or exercise control over a race in the custody of the state court, then the probate exception would apply. Well, how are they seeking control over the race here? It seems to me that this is a declaratory judgment. All it says is that it's an enforceable contract. It's not stepping in and saying that we're going to order that the race be divided up, right? Right. No, but Judge Sullivan, if you look at the actual judgment, the final judgment, the wording of the judgment with the court below, Judge Seibel said, quote, the defendant is obligated to sell the interest of the estate of Phillip Mann and Associates of Rockland County, LLC, to the plaintiff, Uri Sasson, and Arnold Garelick, for $1,000. No, Arnold says it says obligated. It's a declaration of obligations under the contract. It's not an order to sell it now. It's not an order to dispose of the race, is it? Your Honor, I think it's a mandate. I think it goes beyond just a claim. It wasn't a declaration of the rights of the plaintiff. It was a mandate to the defendant, who was the executor, who is the executor of the estate. What did it mandate the executor to do? It tells him that you're obligated to sell that asset. But that's a declaration of the rights or obligations under the contract, right? I would disagree, Your Honor, respectfully, because if you look Parties would have to go back to probate court, right, and then figure out what happens to the property. Yes, and it's not unusual And so that takes care of the probate exception. I mean, that makes the point. The assets not being disposed of here, they'll be disposed of in probate court, one way or another. Judge Chin, I guess the point I'm trying to make is that there is an improper mandate that was created here. It's more than just declaring a right. You might want to move on to your other points. Okay. I was going to indicate, too, just for your reference, if you look at left courts at page 107, you dealt with a very similar issue, where you were asked to declare a right, a plaintiff's right in property, and you declined to do so, saying that to do that would assert control over property that remains in the control of state courts. And so the point I'm trying to make is that the eccentricities of state law, the variations in state law cannot determine federal jurisdiction. And so otherwise, you would have 50 different iterations on the probate exception. And just because a matter is not resolved strictly in the probate court, but in another state court, and then it flows back to the probate court, and the probate court maintains control of the race or custody of that, that's not improper. But why would the state court be any better suited to resolving this declaratory judgment action than the federal court? Because, well, it actually is not. But in a situation where there's a mandate created, that would be crossing the line, and that would be exercising control of a foreign jurisdiction, exercising control over a race in the custody of the state court. And so it's two things. One, it's creating a mandate. And, two, it's misunderstanding the role of the exception as it relates to another court besides the probate court. I don't think the probate exception says that if a matter cannot be resolved in and only in the state probate court, then it applies, because many probate courts will have a matter go to a court of jurisdiction, and then it comes back to the probate court. That was the main point I wanted to make there. What is the evidence that, well, there's lots of evidence in the record that the agreement was orally modified. What is there in the record to show that it was not orally modified? One, we have an agreement made in 1997 that said that it cannot be orally modified except in writing. And, two, we have the General Obligations Law that says it cannot be modified unless there's a writing. And we have the Limited Liability Company Law that says that there's no – I asked you for what evidence. We have 17 years of tax returns. We have 17 years of K-1 statements being issued. We have no evidence that there's a statement that he agreed to surrender his shares or even made any statement that he intended to surrender his shares, or that he gave up ownership, or that he was in any way not an LLC member. And I think that there's an issue of – Testimony of the lawyer, the accountant? I'm sorry? What about the testimony of the lawyer and the accountant? I think it was inconsequential, because the lawyer approached a man who was 80 years old and asked him to sign documents. And there's a question of fact as to what I'll have nothing to do with this or I'm not involved with that means. Before that point, there was never an allegation that he had lost his shares in the corporation. But asking him to sign a guarantee when he was 80 years old and taking that testimony, which passes on credibility and which determines issues of fact, was improper. And so in that case, they never testified that he told us, I want out of the corporation, or they never testified that he said, I surrender my shares. He simply said, I have nothing to do with this. The this was never developed. It was never set forth in separate evidence. And so their testimony was inconsequential. There were multiple unresolved material issues of fact that should have been reserved. And the court overstepped by, one, discounting the actual letter of what the agreement said and then leapfrogging over a number of different laws and reaching that result. It's just fundamentally unfair to take away an interest based on that oral modification agreement theory. The one thing I'll say, too, is that that theory was never advanced in the pleadings. It was never raised as an affirmative defense. It was raised six years into the case when, frankly, the court below wanted to get rid of the case. But there were unresolved issues of fact that should have been left to the trier effect. And finally, the last issue I'm going to resolve, I'm going to address, is exercising the option improperly. That's a legal question. We briefed that in detail. And the wording of the option itself is in the record at 865 to 66. They were referenced to basically leaving the shares to Arnie and Uri in equal shares or their estates in equal shares. And again- Your point is that the option should have been exercised by the two of them jointly rather than- Right. And the fact that they did it separately in writing is not sufficient? Right. It amounted to essentially a counteroffer. And even one could have done it- Where does it say jointly? It doesn't say the word jointly. So why would we infer that or insert that? Because you would need to look at the language that leads up to that point in that specific, in the record at 865 to 66, and need to consider the law on strict application as it comes to options. All it says is written in writing, right? That's all it says? Yep. So weren't there notifications in writing? There were, but each one tried to claim the option for himself as opposed to claiming the option for both of them because all the language leading up to the point of the option talked about equal shares. But the judgment doesn't say that. I'm sorry, Your Honor? The judgment doesn't say that. You said each one claims it, but the judgment doesn't say it goes to just one of them or the other. No, Your Honor, the point I wanted to make is that it had to be exercised together. It was not available to one. Why? Because of the language. But we're reviewing a judgment, right? You're reviewing the opinion of the court below. Yes, Your Honor. Oh, we are? The opinion? Yes. Really? Well, the judgment was a mandate. The final judgment was a single sentence that was a mandate, Your Honor.  It's a page and a half. Right. Well, the wording of the judgment, though, the key wording is in the record at SPA page 121. And it says the defendant is obligated to sell the interest. Yes, to whom? To the estate. The interest of the estate to the plaintiff, Uri Sison and Arnold Garrow. And to one and the other. It doesn't say just to one. Right. But, Your Honor, the point I'm making is that we don't even get to this point if the option was improperly exercised in the first place. Why? We're reviewing the judgment. If the judgment is correct, why shouldn't we affirm it? Because the decision that the judgment is based on was incorrect as a matter of law. Decision? Whose decision? The decision of the court below. The judgment comes from the court below, and that's what's here to be reviewed, the judgment. Yes, Your Honor. But in order to reach the point of settling the judgment, there was a decision in the court where the court interpreted the option, basically allowed the option to be exercised by either party and not both of the parties together. That's the only point I want to make. That's not in the judgment, is it? That language is not in the judgment, no, Your Honor. So we review the judgment. Right. But all of the decisions are merged into the final judgment, Your Honor. I understand what you're saying. All the decisions are? All of the decisions are merged into the final judgment here because it disposed of all the issues in the case. What's your basis for saying that we can't just look at what the judgment says on its face? Your Honor, I'm not saying that. I'm not disagreeing with you. When we can't just look at the judgment on its face, it says it goes to both of them. Yes, Your Honor, it does. But what I'm raising on that issue is that the option was not, it was not a race to the courthouse. It was not, I'm first in time, and that was an error of law leading up to the judgment. The party made an error of law? No, the court below made an error of law. In doing what? In recognizing that the judgment, the option was not validly exercised. Even though the court said, I understand what you're saying. You're saying it's got to go to both of them, right? Yes. And that's what the judgment said. No, but I'm saying that the judge concluded it goes to both of them. The court got to the right judgment for the wrong reasons. Is that what you're saying? I'm saying that as far as the plaintiffs are concerned, they received the right judgment, but the reasoning behind it and the legal reasoning on the exercise of the option was wrong. Well, you're saying that they needed to give notice in a particular form. It had to be one piece of paper, and it had to have both signatures or both names on it, and they had to say, in essence, we are jointly seeking to have this interest transferred to us. That's what we're saying, Your Honor, yes. But there's nothing in the agreement that says that, right? Yes, but there's nothing in the agreement that uses the word. It's not joint, is it? It's in common, isn't it? There's nothing in the agreement that uses the word joint. Never mind the agreement. The judgment doesn't say either joint or in common, does it? No, it doesn't. It says to both of them. Yes, it does. And what's New York's default rule when something is given to two people without saying joint or common? There's got to be a default rule, right?  And do you know what it is? No, I don't, Your Honor. Would you accept that it is in common? Your Honor, I would accept that. And when two people get something in common, what do they do if they don't want to operate it together? What do they do? I'm not sure where you're going, Your Honor. They divide, don't they? Right. But, Your Honor, the point I'm making is that— And isn't that what the testator wanted here, each of them to get one-sixth? He wanted that if they exercised the option properly, if all the other conditions had been met. I don't care how they did it so long as the judgment does it correctly. But because, Your Honor, leading up to this, there were other issues in the case that have to do with taking monies, taking distributions, cutting him out, refinancing, taking millions of dollars. And if they had reached that point and all the other things were not done, it becomes very irrelevant for them not exercising the option. But that was one of a number of arguments. All right. Well, we've gone way over, but you've got a minute of rebuttal. So we'll now hear from your adversary. Thank you. Mr. Kantrowitz, you're first. Thank you, Your Honor. A pleasure to be back live in court again after a long layoff. There is a fundamental flaw in the appellant's argument relating to the probate exception. And I don't want to use up a lot of time on it. I've allocated 50% of my time to my co-counsel on the case. But I do want to point out the fundamental flaw, and that is the race that is the subject of this dispute, which is the real estate in Rockland County that's owned by an LLC has been in the exclusive custody and control of our clients for 25 years, 17 years of which during the time the decedent was alive. It has never been in the custody control possession of the decedent or his estate. Therefore, the entire argument that this asset is in the custody and control of the probate court somehow through the executive of the estate is misplaced. What the executor has is a piece of paper which gives him a claim on which he made 10, 9 or 10 counterclaims for affirmative breach of contract, breach of fiduciary duty, tortious fraudulent inducement into the contract, et cetera. And those are claims. It is actually the estate that is reaching out, trying to get an asset, trying to get a part of an asset that under the contract it's not entitled to. Under the contract- So do you think it would make a difference whether or not the property had been in the possession of the estate, but there was a contract as opposed to, in this circumstances, you're saying that the property is in the possession of your clients and the estate's trying to grab for it. Do you think that would make a difference for the probate exception? Ultimately, I don't think it would make a difference. The argument that it is in the possession of the client is just false and misplaced. And interestingly, if we're talking about the jurisdiction issue, just for another moment, the claims that were brought by the estate, the nine causes of action that in this case were affirmative defenses, had they actually been brought in state court by the Florida State against New York residents, our clients would have had the absolute right to remove those claims to federal court under diversity jurisdiction. But does any of that have anything to do with the probate exception? My argument is it doesn't. The probate exception doesn't apply. The argument has been made vigorously by my adversary that somehow it still does apply. I think that clearly the issues in this case are not subject to the probate exception, because every court, Marshall, Markham, Marshall, Leskowitz, Ashton, before that, all say the same thing, that a federal court has the right to adjudicate the rights of the parties and make a determination as to rights as long as they are not administering an estate or probating a will or it's a will contest. And none of that exists here. We have exactly what the district court is permitted to do, which is look at the contract, look at the competing claims, and set the rights and obligations of the contract. And then it's sent back to the probate court, as your honors have recognized, and the probate court makes the declaration ultimately. And the fact that it has to give full faith and credit and recognize the power and authority of a federal district court does not violate the probate exception. And what happens next? In our case, we go back. The Florida court now has a stay in effect until there's a resolution of the appeal. And as soon as the appeal is resolved, we go back to probate court. And the probate court looks at the decision of Judge Seibel and says, I am obligated to issue an order at this point declaring that the estate should transfer the asset to the two parties. Mr. Gallek and Mr. Sessom. Jointly or in common? In common. And then what? And then my clients would continue to go on their merry way with the asset that they've had possession and control of. This is actually like a cloud on the title of the- Do they divide it so that each gets one-sixth? Each would end up with 50% of the ultimate entity. That's what I mean. What's the next step in the sequence you just gave? After, as you hope, the probate court says one-third goes to the two of them in common. Then what? The records of the LLC would reflect that the membership interests, they're always splitting all the profits 50-50 and all the losses 50-50. They've never included the other party. He maintained a 33% capital share so as not to incur the tax on the negative capital. They keep the interest in common but divvy up the money. Is that it? They have already been divvying up the money. They will now just eliminate his 33% capital share and it will now be 50% capital share each to each of the parties. Do they need to partition as they would with real estate? Only if they no longer want to operate the LLC. They're going to own the LLC, each with a 50% membership interest. If they were to come into a dispute among themselves, they would either dissolve the LLC or partition. The LLC owns the real estate. So the LLC is one entity that owns the real estate. They don't have to partition the real estate. They could partition their interest in the LLC ultimately. I don't think there's any requirement that they do that. It did seem odd that each made their own notice as opposed to doing a joint notice. It sounds like things are hunky-dory. So they're going to operate together. They've been operating it together. Why not just one writing that says, here's your notice? As you can see from the record, there is some contentious relationships involved in the parties here. And the fact is that my client who sent the first notice said he's exercising the option pursuant to the contract, not just for himself, pursuant to the contract. He gave the notice. Then subsequently, Mr. Sassone, through his counsel, sent a notice that said, hey, just make sure we're exercising this contract. It was sort of a belt and suspenders. If they were more in tune with one another and were regularly speaking to one another, perhaps one notice could have been sent. But there's a strict time limit in Florida as to when those notices had to be sent. And nobody was going to delay and dilly-dally and try and figure out the only way to do it. There wasn't an only way. The contract says, just give notice in writing. And that's what they both did. So your view is that the first notice was sufficient by itself? I believe so, yes, Your Honor. Each individual notice was sufficient by itself. And the fact that there were two doesn't make them deficient. Yes, sir. Your adversary said there were 17 years' worth of tax returns, et cetera. Do those records indeed show that Philip drew no money out of- Exactly, Your Honor. And he didn't put any money in and he didn't draw any money out? That's correct, Your Honor. That's what the records show? The records show that. And he did not participate in any of the operation of the business. He received K-1s each year. In fact, Klein testified, the accountant testified- What does it mean that he had a 33% capital interest? So- Or is this really for the IRS? Purely for the IRS. In an LLC, as opposed to an S corporation where you have to be distributed your ownership share, in an LLC you can have capital share and you can have profit and loss share that are different. So he kept the capital share because he had a large negative- I gather that was fairly meaningless that he had a- It was a- I guess unless they were going to sell the whole thing. Even if they were going to sell the whole thing, he would not have shared in any of the losses or the profits because his interest was purely to prevent the triggering of a tax based upon his negative capital in the account. On death, that negative capital goes away. The basis steps up. So the accountant explained that in his thing. I ceded time to my co-counsel, and I'd like to give Mr. Watkins a chance. Okay. Thank you. Thank you. May it please the court, Ashton Watkins on behalf of Uri Sesson. It appears that most of the issues have already been fleshed out this morning, but I do want to highlight one issue that hasn't been touched on. It apparently has been abandoned by the appellant. So the appellant raised in the brief this issue about subject matter jurisdiction, the amount in controversy being below the $75,000 threshold. That argument wasn't made this morning, so I would ask this court to accept the fact that the appellant hasn't addressed that issue as- Well, they addressed it in their brief. Your view is by not just sort of touching it in oral argument, they've abandoned it? I believe so, Your Honor. I believe that the fact that counsel for the appellant- It's a hard argument to make when we're only giving people ten minutes. It's quite common not to cover every issue that's raised in briefs. That's true, Your Honor, but what I would say in response to that is that counsel outlined the four issues, the four fundamental issues that he believes are important to this case. And that's one of the issues he never mentioned. There is more than $75,000. Absolutely. Absolutely. So the other issues that have already been touched on, and I believe you've talked about in your questions, is the evidence that was filed in support of the motion for summary judgment. So as this court has already indicated in some of the questions, the evidence is so one-sided that was presented by the plaintiffs in the underlying action that the defendant had an obligation to present evidence that showed something to rebut the mountain of evidence or the overwhelming evidence that was presented in the court, and they presented no evidence whatsoever. What do you say about your adversary's argument that when the judgment declares the interest goes to both, the judgment is erroneous because options were not exercised properly? I say that's a mistake. Why? It's a mistake for two basic reasons, I think, Your Honor. One is that the judgment says what it says, and it says that under the agreement the estate is obligated to transfer its interest. I understand that the judgment says that. This point is in saying that it is erroneous because it's based on an improper exercise of the option.  I just want to know what you say about that. And I think that argument is wrong, one, because the judgment says what it says, but also – Well, that doesn't really help me. I understand it says what it says. His argument isn't that it doesn't say what it says. His argument is the judgment is erroneous because options were exercised improperly. And I would say that the options were exercised properly because the option only requires written notice, and written notice was given in this case by both parties. It doesn't say joint written notice. It simply says written notice. So as long as they each came to court, the judgment is okay? I would say yes, Your Honor. Okay. Do you agree with Mr. Kantrowitz that just one invoking the contract would have been sufficient? Or do you think it needed both individuals to make written notice? Actually, I think written notice in any form that essentially, especially as Mr. Gerlich's notice indicated, indicating that we are exercising the option according to the terms of the agreement. I think that would be sufficient because the agreement itself says written notice. It doesn't say it has to come from Mr. Gerlich or Mr. Sesson. It simply says written notice that the parties are going to exercise that option. So it doesn't say it needs one signature, two signatures, or any signature? It doesn't say any of that, yeah. And, in fact, in this case, there were no signatures by the individual parties. They were made by counsel. And with that, Your Honor, I would submit. All right. Thank you. So, Mr. Mann, you have one minute of rebuttal. Thank you, Your Honor. Your Honor, on that one minute, I just wanted to address again the probate exception because I think it's important. Well, let's first figure out, have you waived? Do you think that you waived your argument on amount and controversy? Absolutely not. That's fully addressed in the brief, and we weren't going to waste time because, as Judge Chin said, there's only so many minutes you have. But what I was going to say is that you heard Mr. Kantrowitz. He was asked about the effect of the judgment. And he said, well, the Florida court would be obligated to issue a decree. You know, when you prepare for an appeal, you look at every case involving the probate exception, everything this court has done and other courts have done. And what's interesting is the emphasis is also on what the plaintiffs asked for. What did they ask the court below to do? And here they asked for an order directing the sale of decedent's interest. That's at A55 in the record. They asked for a declaration of an obligation to transfer. That's at A94. And they asked for an order declaring and directing the estate be obligated to sell the interest and sign all necessary documents to transfer title. That's at A293. And the point I tried to make is that- They didn't get that. They only got, of the three you mentioned, they only got one. They only got the second one, right? Right. But the point is that they're asking for an order or a directive or a mandate. Does the probate exception turn on what is asked for or what the district court does? Both. It's relevant. Ultimately, it comes down to what the district court does. But courts have looked at what the plaintiff is actually asking the court to do first and what the court does do. Even if the district court says, I know if I do what you're asking for, I don't have jurisdiction, so I'm going to do what I do have jurisdiction over. What's wrong with that? Well, I think, Your Honor, is that the court below here went too far. It issued a mandate, and the Florida court is going to say, my hands are tied. On this race in my custody, that court has issued control or has exercised control over it, and that control went too far, and it's a violation of the probate exception. Even if you look in Lefkowitz, in Lefkowitz, there was a similar situation at page 107 in Lefkowitz where the court was called upon to make a declaratory judgment on the plaintiff owning an interest, and the court declined to do that, saying that we'd have to exercise control. The court below here went far beyond that and issued a mandate to the executor of the estate, and that's improper under the probate exception. Thank you, Your Honor. All right, thank you. We will reserve decision. Thank you, all three of you, for your arguments.